## Case No. 11,486.
### PUTNAM v. YERRINGTON.
[2 Ban. & A. 237; 9 O. G. 689; Merw. Pat. Inv. 518.] [1]

Circuit Court, D. New Jersey. March 28, 1876.

PATENTS—WANT OF NOVELTY—PRIOR USE—BURDEN OF PROOF—PRESUMPTION IN FAVOR OF PATENT—PATENTABILITY—CHANGE OF MATERIAL—REISSUES—FORMER ADJUDICATIONS.

1. Upon the issues of want of novelty and prior use, the burden of proof rests upon the defendant.

2. The presumption is that the patented improvement contains or embraces something which is patentable, and which is not contained or embraced in the mechanism known at the date of the original application.

[Cited in Atwood v. Portland Co., 10 Fed. 287.]

3. Courts of co-ordinate jurisdiction will refuse, upon the same issues and state of proofs, to question the righteousness and propriety of former adjudications.

4. Mere change of material, without the exercise of mechanical skill, is not patentable.

5. It is the invention of what is new, and not the arrival at comparative superiority or greater excellence in that which was already known, which the law protects as exclusive property, and which it secures by patent.

6. The scope and object of reissues discussed.

7. Smith v. Nichols, 21 Wall. [88 U. S.] 112, cited.

[This was a bill in equity by Henry W. Putnam against Henry W. Yerrington, for the alleged infringement of reissued letters patent.]

Thomas H. Dodge and Palmer E. Havens, for complainant.

F. C. Nye and L. C. Ashley, for defendant.

NIXON, District Judge. The bill is filed in this case for the alleged infringement of reissued letters patent No. 1,606, for a new

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq. and here reprinted by permission. Merw. Pat. Inv. 518, contains only a partial report.]

and useful improvement in bottle-stopper fastenings. The original patent was issued to the complainant March 15, 1859, for the term of fourteen years. This being duly surrendered, he obtained the reissue on the 19th of January, 1864. for the residue of the term, which was further extended by the commissioner of patents for seven years from March 15, 1873. The defendant, in his answer, and afterward by stipulation, admits the infringement of the four claims of the said reissue, but insists that the said patent is invalid for two reasons: First, because the complainant was not the original and first inventor; and second, because the reissue is not for the same invention as that shown and described in the original patent.

In considering these defences it will be necessary to find out, as precisely as we can, what the complainant claims in his reissue, and then to compare the invention, as thus ascertained, (1) with such others as the defendant has exhibited to prove that the complainant has been anticipated, and (2) with the specifications and claim of his original patent.

The patentee's invention has reference to improvements in fastenings for bottle corks and stoppers. In the body of the specifications to his reissue he states that the nature of his invention consists in forming the fastener of wire, bent in such a manner that if the pressure upon the cork is sufficient to bend the wire fastener, it will retain the cork more firmly, and the cork requires to be pushed in before the fastener can be pushed aside, thus causing the pressure to render the fastening more secure, instead of more liable to failure. He also forms joints for securing the fastener and forming a hinge upon which it may be turned aside, by bending the ends of the wires at right angles, or nearly so, to the sides of the fastener, and uses a wire for attaching the fastener to the bottle in which the eyes are formed for receiving the ends of the fastener, and on which the fastener swings, thus producing by one piece of wire a much more simple, effective, and cheap attachment than any before made. His manner of using the fastening is thus described: "The bottle is placed under the fountain, and its neck encircled at the top by the tube that conveys the saturated water or other liquid into the bottle, the cork being placed in the tube above the side pipe that admits the fluid into the bottle. By turning a stop-cock the bottle becomes filled with the liquid, and by means of the piston above the cork, the cork is forced into the neck of the bottle, the fastening being turned aside. When the bottle is full, and the cork inserted, the pipe is elevated, the piston still holding the cork. The fastener is then forced over the end of the cork, in which position it is held from being pressed out by the expansion of the gas." He then calls attention to the fact that if the pressure of the gas in the bottle is sufficient to bend or spring the wire fastener upward, the U-shaped part will assume an inclined form with the bend the highest, and the cork being swelled up in said bend so that the wire is embedded, the cork cannot escape by acting under this incline and shoving the fastener to the left; neither can the fastener escape to the right because of the inclination itself. Hence, it is sometimes necessary to force in the cork before the fastener can be released, etc.

Disclaiming, then, a fastener of sheet metal with a U-shaped opening to pass the plunger, he proceeds to state his four claims, as follows: "1. Forming the fastener, at that part that comes over the cork, of a piece of wire of a U form, with the ends returned and connected to the bottle, in order that the pressure on the cork or stopper may cause the fastener to hold more securely, as specified. 2. I claim a wire fastener for a cork or stopper, in which the ends of the wire are bent nearly at right angles to form the joint or hinge on which the fastener is turned, substantially as specified. 3. I claim forming the eyes for the reception of the fastener, by means of a wire bent as set forth. 4. I claim a wire fastener for the stoppers of bottles, fitted so that it can be pressed aside from over the stopper, as set forth, in combination with band or fastening attaching the same to the neck of the bottle, as specified."

If the question before the court was whether the plaintiff's reissue was an infringement of the Allender patent of July 24, 1855, it would be of very easy solution. But the latter is now open to the public by lapse of time, and the real inquiry, therefore, is whether there is any patentable improvement in the alleged Putnam invention which had not been anticipated by other inventors. Has Putnam added anything to the previously-known mechanisms and contrivances for securing the stoppers in bottles containing aerated liquids which furnishes some new and useful results? The mere change of material used in the construction of the fastener, of course, is not invention; it is only the exercise of mechanical judgment. The substitution of wire for tin, for instance, hardly adds enough to the domain of knowledge to raise the person to the dignity of an inventor who first thought of making such a change.

The supreme court, in the recent case of Smith v. Nichols, 21 Wall. [88 U. S.] 112, has stated all that need be said upon this point. It was there held that, "a mere carrying forward, or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents doing substantially the same thing in the same way, by substantially the same means, with better effects, is not such invention as will sustain a patent." It is the invention of what is new, and not the arrival at comparative superiority or greater excellence in that which was already known, which the law protects as exclusive property, and which it secures by patent.

Bearing this fact in mind, has any new result been produced by the substitution of wire for tin which entitles the complainant to be reckoned the inventor of a patentable improvement? If any, it is found in the first claim of the reissue. It is there stated and claimed to follow from the use of the wire, that the stronger the pressure upon the cork or stopper the more securely will the fastener hold. This result arises because the wire, unlike the tin, presents a very small surface to the cork, and because the increased pressure from within the bottle forces up the cork around the wire, enveloping it, or causing it to become embedded in the cork. It must be regarded as an important and valuable addition to the efficacy of the Allender invention, if the allegation of the complainant contained in the specifications of his reissue be true, that the notch in the metal strap of the Allender fastener "allows the cork to project at this point, and, by springing up the metal on the sides of the notch from an inclined plane against which the pressure acts, to force the fastener aside and relieve the cork." The complainant, then, by the substitution of an equivalent, claims to have accomplished a new and beneficial and better result; and while it may be true, as was so strongly urged by the counsel for the defendant, that Putnam infringed the Allender patent in putting his improvement into practical and working form, nevertheless, it does not follow—now that the former belongs to the public—that it may be so used by the public as to include the complainant's improvement.

Upon the issue of the want of novelty and prior use, the burden of proof rests upon the defendant. It is for him to show, to the satisfaction of the court, that the complainant's invention has been anticipated. The presumption is in favor of the patent, and that the Putnam improvement contains or embraces something which is patentable, and that is not contained or embraced in the mechanism known at the date of the original application. This is emphatically true in the present case, for the evidence shows that it was not granted without a controversy and careful examination. The Allender and the I. C. Day patent, and the De Graw application rejected December 4, 1855, were all considered by the commissioner, and, notwithstanding its apparent resemblance to some of the devices exhibited in these, it was issued in 1859. It stood without successful impeachment until 1864, when it was surrendered and a reissue obtained, undergoing at that time a re-examination by the commissioner of patents. At the expiration of the original patent, in 1873, after another contest before the proper authorities of the patent office, its life was extended for seven years longer.

The question of its validity and novelty has also frequently been before the courts: (1) in the Eastern district of Wisconsin in 1871; (2) in this district in 1872; (3) in the Eastern district of Missouri in the same year; (4) in the district of Connecticut in the same year; (5) again in the Eastern district of Missouri in 1874; and (6) in the district of Massachusetts in 1875; and in every case the patent has been sustained. The records of these several suits have been exhibited here, and I have examined them with some care to ascertain whether any reason existed for the charge of the defendant's counsel on the argument that in none of them were the real merits of the controversy involved or the proper defences set up. In some of them, and especially in the one in this district, the contest was chiefly made on the motion for a preliminary injunction, but they all seem to have been under the management and control of able counsel, and the results have been acquiesced in by the defendants without appeal. Under these circumstances it requires an exceptionally strong case to induce me to reach a different conclusion. Apart from the interest of the public that strife should cease, much deference is due to the judgment of every court of co-ordinate jurisdiction; and appreciating as I do the candor and ability of the learned judges who presided in these cases, I should hesitate and indeed refuse upon the same issues and state of proofs to question the righteousness and propriety of their decisions.

But I am inclined to think that the defense in this case has been more full and able than in any of the previous suits, owing doubtless to two reasons: First, because the defendant has had all the light and experience afforded by the investigations of previous contests; and, second, because he has enjoyed the professional services of the counsel who has been heretofore in the employ of the complainant in maintaining the validity of the patent, and who is presumed to have become familiar with the weak places, if any there be, of the complainant's armor.

But notwithstanding the presumption in favor of the patent, and notwithstanding the adjudication in support of its validity, after comparing the reissue with the various devices shown in the Allender, Day. Chalus, Menage and Bougg. Bufnoir and Master patents, and De Graw's rejected application, I am not able to perceive upon what principle the second, third, and fourth claims can be sustained. I do not find anything in the second and third; nor do I observe any suggestion of new methods which are not clearly equivalents for what was before known and used. The fourth is a combination of the subject-matter or elements embraced in the first, second, and third claims; and although inventors are allowed to obtain patents for a combination, when all the constituents are old, provided a new and better result is reached, yet when the patentee gets all that he has invented or discovered in one claim it is better that he should not be permitted to set up and embarrass the public with another claim which gives no additional security or protection to his invention. It is therefore the opinion of the court that the first claim

only of the complainant's reissue should be sustained. The remaining inquiry is, whether the reissue is void for being a different invention from the one described in the original patent? This question is determined by observation and comparison of the specifications and claims of the two instruments. The section of the act which authorizes a reissue requires that it shall be for the same invention, and that it shall not contain any new matter. It is not meant by this, as the counsel for the defendant seems to insist, that no new or different language should be employed. The very object of the reissue is to give an opportunity to an inventor to change, modify, and correct his specifications or claims to the extent necessary to cure defects and supply deficiencies arising from inadvertence, accident, or mistake, and without any fraudulent or deceptive intention. By the introduction of new matter I understand such an enlargement of the original specifications or claims as to include combinations or results which did not necessarily flow from the invention as originally stated and described.

I have carefully compared the complainant's patent, as first obtained, with his reissue. The statement of his invention and the figures used to illustrate it are the same in both cases. Not a device or instrumentality appears in the second that was not exhibited in the first. He states results in the reissue which were not stated in the original patent, and which were omitted, I presume, because he did not know, until he was taught by experiment, that such results would follow. But an inventor is allowed to do this in a reissue without subjecting himself to the imputation of incorporating new matter. He is entitled to all the uses to which his patent may be applied, and to all the beneficial results which legitimately follow the use of his instrumentalities. The principal new effect which he sets forth in the reissue, and which he failed to note in his former specifications and claims, is the substance of the first claim, to wit: Such a formation of the new fastener over the cork that the pressure thereon may cause the fastener to hold more securely, as specified. No new device was needed to accomplish this result, and hence the claim falls within the objects and purposes of a reissue.

There must be a decree against the defendant for infringing the first claim of the complainant's patent, and an order for an injunction and an account.

[For other cases involving this patent, see note to Putnam v. Hickey, Case No. 11,480.]

━━━

PUTNAM (YERRINGTON v.). See Case No. 18,137.

PUTNAM COUNTY (BURLINGTON & S. W. R. CO. v.). See Case No. 2,169.

PUTNAM COUNTY (NUGENT v.). See Case No. 10,377.

PUTNEY v. The CELESTINE. See Case No. 2,541.

PUTTMAN (BLANCHARD v.). See Case No. 1,514.